Richard F. **CARELLA,**
Plaintiff-Appellee,

v.

**STARLIGHT ARCHERY AND PRO LINE COMPANY,**
Defendants-Appellants.

Appeal No. 86-728.

United States Court of Appeals,
Federal Circuit.

Oct. 22, 1986.

As Modified Dec. 12, 1986.

Ernie L. Brooks, of Brooks & Kushman, Southfield, Mich., argued for plaintiff-appellee. With him on brief was Thomas A. Lewry, of Brooks & Kushman, Southfield, Mich.

Thomas M. McKinley, of Price, Heneveld, Huizenga & Cooper, Grand Rapids, Mich., argued for defendants-appellants. With him on brief was Randall G. Litton, of Price, Heneveld, Huizenga & Cooper, Grand Rapids, Mich.

Before BISSELL, Circuit Judge, COWEN, Senior Circuit Judge, and ARCHER, Circuit Judge.

ARCHER, Circuit Judge.

## DECISION

Appellants, Starlight Archery (Starlight) and Pro Line Company (Pro Line), appeal from a judgment of the United States Dis-

trict Court for the Eastern District of Michigan, 595 F.Supp. 613, 224 USPQ 879 (1984), holding U.S. Patent No. 3,365,800 ('800) issued to Richard F. Carella (Carella) infringed and not invalid. The court also ordered Pro Line to pay damages; enjoined appellants from further acts of infringement of the '800 patent; and dismissed Pro Line's counterclaims seeking, *inter alia,* a declaration of patent invalidity and noninfringement. We affirm.

## I. Background

The '800 patent for an archery bow sight assembly issued to Carella on January 30, 1968, on an application filed in the United States Patent and Trademark Office (PTO) on August 7, 1967. It contains ten claims, with claim 1, the only independent claim, reading as follows:

An archery bow sight assembly comprising:

support means adapted for attachment generally parallel to the length of an archery bow, and a plurality of independent sights respectively connected to and each independently adjustable longitudinally along said support means, each of said sights defining a longitudinal distance different from the longitudinal distance defined by any one of the other sights so that said assembly may be attached to an archery bow and each sight independently positioned relative to said support means for properly aiming the bow by moving the bow to view a target at a distance from the bow through the respective sights until the apparent vertical height of the target equal the longitudinal distance defined by one of said sights, thereby properly aiming the bow for the particular target.

The Carella bow sight has independently adjustable rings of calibrated sizes and a mount that permits overlapping of the rings. These features allow the Carella bow sight to be used for simultaneous range finding and aiming.

Pro Line is in the business of the manufacture, distribution and sale of archery related products, including bow sights. Starlight is a customer of Pro Line, but has also been a customer of Carella.

Pro Line approached Carella in 1973 and again in 1978 for a license to produce the Carella bow sight, but Carella refused. Pro Line sought advice from patent counsel in 1978 and 1980 on the validity of the Carella '800 patent. Thereafter, Pro Line manufactured and sold its Model M–525RF (Pro Line) range finder hunting sight and M–5096RF (Pro Line) range finder pins. The Pro Line bow sight comprises a bracket with a single slot and a plurality of sight elements made from standard sight pins to which wire rings are threaded.

On May 6, 1981, Carella filed suit against Starlight, alleging that Starlight had infringed the '800 patent by selling Pro Line sights and Pro Line sight pins. Pro Line intervened as a party defendant and filed counterclaims seeking a declaration of patent invalidity and noninfringement, damages and injunctive relief.

In their Answer and Counterclaims, appellants alleged the '800 patent was invalid because (1) the claimed invention was anticipated by U.S. Patent No. 3,056,206 ('206) issued to Moore and by the Schneider Rite-Flite Sight, (2) the claimed invention was obvious in view of prior art not considered by the PTO during prosecution of the '800 patent, and (3) Carella procured the '800 patent by inequitable conduct consisting of his failure to disclose to the PTO the settlement of *Perkins v. Carella* (Civil No. 31581, E.D.Mich. August 5, 1968), a declaratory judgment action, and material prior art. Appellants also asserted that even if the '800 patent were enforceable, they had not infringed the patent, and if they had infringed, treble damages and attorney fees were not warranted.

The district court held the '800 patent infringed and not invalid and ordered Pro Line to pay to Carella $60,466.00 in lost profits, together with $1,663.06 in costs and prejudgment interest; enjoined appellants from further acts of infringement of the '800 patent; and dismissed Pro Line's counterclaims. The court declined to award treble damages and attorneys fees. It also denied appellants' motion for reconsideration.

### Issues

1. Whether the district court clearly erred in holding that the '800 patent was not anticipated by either the Moore '206 patent or the Schneider Rite Flite sight.

2. Whether the district court erred in holding that the claimed inventions in the '800 patent would not have been obvious in view of the prior art.

3. Whether the district court erred in concluding that the '800 patent was not rendered unenforceable by inequitable conduct of Carella.

4. Whether the district court erred in awarding $62,129.06 in damages, including lost profits, prejudgment interest and costs to Carella.

### II. Validity

■ The statutory presumption of patent validity imposes the burden of persuasion on one who attacks the validity of a patent. 35 U.S.C. § 282. Facts establishing anticipation or underlying a determination of obviousness must be proven by clear and convincing evidence. *RCA Corp. v. Applied Digital Data Systems, Inc.*, 730 F.2d 1440, 1444, 221 USPQ 385, 388 (Fed.Cir. 1984).

### A. Anticipation

■ Appellants contend that the claims of the '800 patent are anticipated, in accordance with the provisions of 35 U.S.C. § 102, by the Moore '206 patent. Anticipation under Section 102 requires "the presence in a single prior art disclosure of all elements of a claimed invention arranged as in that claim." *Panduit Corp. v. Dennison Manufacturing Co.*, 774 F.2d 1082, 1101, 227 USPQ 337, 350 (Fed.Cir.1985) (quoting *Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1548, 220 USPQ 193, 198 (Fed.Cir.1983)).

The district court found that no single prior art reference disclosed each and every element of the claimed invention. This court cannot set aside the district court's findings of fact unless persuaded that they are clearly erroneous. Fed.R.Civ.P. 52(a). *Seattle Box Co. v. Industrial Crafting & Packing, Inc.*, 731 F.2d 818, 823, 221 USPQ 568, 572 (Fed.Cir.1984).

With regard to the '206 patent, the district court found that it did not teach or suggest use of circular sights for simultaneous range finding and aiming. Based on this, the court found no anticipation, apparently determining that calibrated sights were necessary to simultaneous range finding and aiming in the manner claimed by Carella. In other words, taken in conjunction with the previous finding, that no single prior art reference discloses each and every element of the claimed invention, we hold that the district court was not clearly erroneous in finding that the '206 patent did not clearly disclose a structure having "independently positioned" sights for simultaneous range finding and aiming, i.e., a structure that enabled "properly aiming the bow for the particular target."

Appellants also claim anticipation under § 102(a) and (b) by the Schneider Rite-Flite sight. They say it was known or used in this country and was described in printed publications, a magazine and a mailer prepared by the Wisconsin Bow Hunter Association (WBHA), prior to the invention date. In addition, they say that it was on sale more than one year before Carella's filing date.

■ Although in some circumstances unsupported oral testimony can be sufficient to prove prior knowledge or use, it must be regarded with suspicion and subjected to close scrutiny. *Miner v. T.H. Symington Co.*, 250 U.S. 383, 386, 39 S.Ct. 542, 543–44, 63 L.Ed. 1045 (1919); *Lockheed Aircraft Corp. v. United States*, 213 Ct.Cl. 395, 553 F.2d 69, 75, 193 USPQ 449, 455 (1977).

Consistent with these principles, the district court explicitly rejected much of Mr. Schneider's deposition testimony (given in the *Perkins v. Carella* case), finding that only the following three relevant facts were established: an advertisement for the Rite-Flite sight appeared in a WBHA mailer that was mailed on August 17, 1966; Mr. Schneider began to sell his Rite-Flite sight to the public after the mailing; and an advertisement for the Rite-Flite sight appeared in the July/August, 1967 issue of *Bow & Arrow Magazine*. In view of its

findings regarding Carella's development of his invention, the district court concluded that these facts standing alone did not establish anticipation.

■ The statutory language, "known or used by others in this country" (35 U.S.C. § 102(a)), means knowledge or use which is accessible to the public. *In re Bass,* 474 F.2d 1276, 1296, 177 USPQ 178, 193 (CCPA 1973) (Baldwin, J., concurring); *In re Borst,* 345 F.2d 851, 854, 145 USPQ 554, 556 (CCPA 1965); *see also, Kimberly-Clark Corp. v. Johnson & Johnson,* 745 F.2d 1437, 1453, 223 USPQ 603, 614 (Fed. Cir.1984). Here the court determined there was no credible evidence in the record indicating the Rite-Flite sight was known or used by, or was otherwise accessible to, the public until after the mailing of the WBHA advertisement on August 17, 1966. One of our predecessor courts has stated that

> one who wishes to characterize the information, in whatever form it may be, as a "printed publication"
>
> * * * should produce sufficient proof of its dissemination or that it has otherwise been available and accessible to persons concerned with the art to which the document relates and thus most likely to avail themselves of its contents.

*In re Wyer,* 655 F.2d 221, 227, 210 USPQ 790, 795 (CCPA 1981), (*quoting Phillips Electronics & Pharmaceutical Industries Corp. v. Thermal & Electronic Industries, Inc.,* 450 F.2d 1164, 1171, 171 USPQ 641, 646 (3d Cir.1971)); *In re Bayer,* 568 F.2d 1357, 196 USPQ 670 (CCPA 1978); *see also Protein Foundation, Inc. v. Brenner,* 260 F.Supp. 519, 520, 151 USPQ 561, 562 (D.D.C.1966) (a magazine is effective as a printed publication under § 102 on the date it reaches the addressee, not on the date of mailing). No evidence was presented as to the date of receipt of the mailer by any of the addressees. Similarly, there was no evidence credited by the trial court of any sale that would cause a statutory bar.

We conclude that the district court was correct in holding there was no anticipation by the '206 patent or Rite-Flite sight.

**B. Obviousness**

■ Appellants argue that the inventions set forth in the claims of the '800 patent would have been obvious, within the meaning of 35 U.S.C. § 103, in view of prior art including the "V" sight, the Adjusta sight, U.S. Patent No. 2,991,556 issued to Wilchek, the Moore '206 patent, and U.S. Patent No. 2,332,080 issued to Howe.

The test for determining obviousness was set forth in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966), and requires the following factual inquiries:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved need, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

383 U.S. at 17–18, 86 S.Ct. at 694.

The district court's findings of fact relating to these inquiries must be accepted unless clearly erroneous. Fed.R.Civ.P. 52(a); *Carman Industries, Inc. v. Wahl,* 724 F.2d 932, 938, 220 USPQ 481, 486 (Fed. Cir.1983).

Appellants point to certain language in the district court opinion which they contend demonstrates that the court misapplied the *Graham* test. They contend that the district court compared a commercial embodiment of Carella's sight to the prior art, instead of the claims of the '800 patent. Although one finding of the court refers to a specific implementation of Carella's concept, other findings compare to the claims of the '800 patent and we find no error resulting from the reference to a commercial embodiment.

Appellants also argue that the district court's finding that "[t]he broad concept of simultaneous range finding and aiming taught by the Carella Patent was unknown to the prior art" is clearly erroneous. The district court's conclusion that the Carella patent is not invalid due to obviousness is amply supported by the findings. The court acknowledged that use of vertical height for range finding, use of multiple elements on a sight and use of circular apertures were each known in the art, but concluded that the prior art lacked any teaching or suggestion to combine the separate features in a manner permitting use of circular apertures for simultaneous range finding and aiming. Obviousness cannot be established by combining the teachings of the prior art to produce the claimed invention, absent some teaching, suggestion or incentive supporting the combination. *ACS Hospital Systems, Inc. v. Montefiore Hospital*, 732 F.2d 1572, 1577, 221 USPQ 929, 933 (Fed.Cir.1984). Here there was none, and thus appellants are urging only hindsight reconstruction.

The court found that the Adjusta sight differs structurally from the Carella sight and that it requires adjustment for range finding. Although the "V" sight provides for simultaneous range finding and aiming, a different result on the issue of obviousness would not follow in view of the district court's finding that the "V" sight uses a completely different structure from the Carella sight. Furthermore, the "V" sight, like the Adjusta sight, teaches away from use of multiple sights.

We do not find the appellants' arguments regarding Howe or the contemporaneous developments in respect of Moore, Schneider and Perkins to be persuasive, since they too represent hindsight reconstruction or were fully considered by the district court.

For this court to reverse the judgment of the district court, we must be convinced not only that the district court engaged in a faulty analysis in applying the law to the facts, but also that a correct application of the law to those facts would bring a different result. Appellants have failed to convince us that, under the § 103 standard as interpreted by this court, a different result should follow on the issue of obviousness. *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1573, 220 USPQ 584, 589 (Fed.Cir.1984). *See also, Gardner v. TEC Systems, Inc.*, 725 F.2d 1338, 1345–46, 220 USPQ 777, 782 (Fed.Cir.1984) (*in banc*), *cert. denied*, 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 60 (1984).

### III. Inequitable Conduct and Unenforceability

■ Accusing Carella of inequitable conduct in failing to disclose the Moore patent and the settlement in *Perkins v. Carella* to the PTO, appellants argue that the district court erred in concluding that the '800 patent was enforceable.

■ Inequitable conduct requires, *inter alia*, proof by clear and convincing evidence of a threshold degree of materiality of the nondisclosed information. *Atlas Powder Co. v. E.I. DuPont De Nemours & Co.*, 750 F.2d 1569, 1577–78, 224 USPQ 409, 414–15 (Fed.Cir.1984). The pertinency of information withheld from the examiner by an applicant is a question of fact and, as such, is subject to review under the clearly erroneous standard. *American Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.1984).

With regard to the Moore reference, the district court concluded that it added little to what was considered by the PTO and found no inequitable conduct on that basis. The district court, as we have previously indicated, properly concluded that the Moore reference neither anticipated nor, in combination with other references, rendered obvious Carella's claims. In view of this, its evaluation of the materiality of the Moore reference is not clearly erroneous.

Citing *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 818–20, 65 S.Ct. 993, 999–1000, 89 L.Ed. 1381, 65 USPQ 133, 138–40 (1945), and *Moog Inc. v. Pegasus Lab., Inc.*, 521 F.2d 501, 504, 187 USPQ 279, 281–82 (6th Cir.1975), appellants also say that failure to disclose the settlement in the *Perkins v. Carella* suit should have rendered Carella's patent void *ab initio*. We have considered this argument, but are unper-

suaded. The cited cases are inapposite because they deal specifically with failure to disclose in the context of an interference proceeding before the PTO, which is not present in this case.

### IV. Damages

■ On the basis of the four-part test for recovery of lost profits set forth in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 197 USPQ 726 (6th Cir.1978),* appellants assert that the district court's award of lost profits was without support in the record. They argue that the court failed to make any findings as to Carella's production and marketing capacity to meet demand for the sight and improperly placed the burden of proof on one element of the *Panduit* test, the absence of acceptable non-infringing substitutes, on them. Appellants also assert that Carella failed to provide detailed computations and supporting documentation on the amount of lost profits.

This court accepted the *Panduit* guidelines in *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578, n. 5, 220 USPQ 490, 494, n. 5 (Fed.Cir.1983), as a permissible way to establish entitlement to lost profits. It is not, however, the exclusive standard for determining entitlement to lost profits. *Bio-Rad Laboratories, Inc. v. Niolet Instrument Corp.*, 739 F.2d 604, 616, n., 222 USPQ 654, 663, n. (Fed.Cir. 1984).

Carella testified that his sight was unique. After extensive consideration of the prior art, the district court found that only Carella's sight and the infringing Pro Line sight provided a similar combination of range finding and aiming functions in a single element for instantaneous shooting. From this, the number of sales by appellants was properly treated as an element in the computation of lost profits to Carella. It was unnecessary for Carella to negate every possibility that the purchasers might have bought another product. *American Hoist & Derrick Co v. Sowa & Sons, Inc.*, 725 F.2d at 1365, 220 USPQ at 772.

Finally, regarding the adequacy of the computation of lost profits, Mrs. Carella testified as to the minimum profit made by Carella on the sale of his complete sight assembly. Obviously, the amount of detailed testimony and documentation regarding computations of the patentee's lost profits will vary with the size and complexity of the patentee's company and with the extent to which that information is challenged or contradicted by the infringer. Mrs. Carella's testimony was unchallenged and uncontradicted. We, therefore, find no basis for concluding that the district court's acceptance of this testimony was erroneous.

### Conclusion

For the reasons stated above, we affirm the district court finding that the '800 patent was infringed and not invalid. We also affirm its award of lost profits.

AFFIRMED.

---

* The *Panduit* test states that "to obtain as damages the profits on sales he would have made absent the infringement, i.e., the sales made by the infringer, a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made." 575 F.2d at 1156, 197 USPQ at 729–30.