41 F.3d 1521
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 TOMIMA EDMARK and Topsytail Co., Inc., Plaintiffs-Appellants,
v.
TELEBRANDS WHOLESALE CORPORATION and Telebrands Direct
Response Corporation, Defendants-Appellees.
 No. 94-1222.
 United States Court of Appeals, Federal Circuit.
 Nov. 29, 1994.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
Jan. 10, 1995.
 
 Before LOURIE, Circuit Judge, BENNETT, Senior Circuit Judge, and SCHALL, Circuit Judge.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Tomima Edmark and TopsyTail Co., Inc. (collectively "Edmark") appeal from the final judgment of the United States District Court for the Eastern District of Virginia, Edmark v. Telebrands Wholesale Corp., Civil Action No. 93-0543-A (Dec. 21, 1993), amended, Feb. 23, 1993), which granted the motion of Telebrands Wholesale Corp. and Telebrands Direct Response Corp. (collectively "Telebrands") for summary judgment. The district court held all claims (1-4) of U.S. Patent No. 5,036,870, issued to Ms. Edmark and entitled "Hair Styling Tool," invalid in light of an alleged prior art hair-styling tool and method of a Mr. John Fosmire. We affirm-in-part, vacate-in-part, and remand.
 
 DISCUSSION
 
 2
 * Ms. Edmark allegedly conceived of a hair-styling tool and method on August 20, 1989. Her tool, which she came to call the "TopsyTail," is used to invert a ponytail (or any hair tail), thus creating a hair style which hides from sight the rubber band or like device used to bind the tail. On October 10, 1989, Ms. Edmark filed an application for patent in the United States. The application issued as U.S. Patent No. 5,036,870 (the Edmark patent) on August 6, 1991. The patent has four claims. Claims 1 and 2 are product claims; claims 3 and 4 are method claims.
 
 
 3
 On April 28, 1993, Edmark commenced this infringement suit against Telebrands in the United States District Court for the Eastern District of Virginia. It was not until after the close of discovery (about mid-October 1993), however, that Telebrands' attorneys first became apprised of a hair-styling tool allegedly created by Mr. Fosmire, who is not a party to the lawsuit. Mr. Fosmire says that he invented a hair-styling tool, which he came to call the "Pony Tail'r", in 1986, and that it is remarkably similar to the "TopsyTail." On November 16, 1993, the court postponed trial, which was scheduled to begin the next day, so that Telebrands could pursue a summary judgment motion regarding the validity of the Edmark patent in light of Mr. Fosmire's hair-styling tool and related activities. The court ordered a briefing schedule for this motion, which was to culminate with a hearing on December 17, 1993.
 
 
 4
 The parties duly filed their papers on the motion. As part of its opposition, Edmark argued that summary judgment should be denied, or a period of discovery set, in accordance with Rule 56(f), Fed.R.Civ.P. On December 21, 1993, without mentioning the request for further discovery, the district court granted Telebrands' motion, ruling from the bench that the quantum and quality of the evidence adduced by Telebrands was such that a jury could not have returned a verdict in favor of Edmark insofar as the validity of claims 1, 3, and 4 under 35 U.S.C. Secs. 102 and 103 was concerned. The district court later amended the judgment to include claim 2 of the Edmark patent, ruling that it too was invalid under Sec. 103 as an obvious variation of claim 1.
 
 II
 
 5
 Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We review a grant of summary judgment de novo. KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1449, 27 USPQ2d 1297, 1301 (Fed.Cir.1993). In ruling on summary judgment, a court must bear in mind the actual quantum and quality of proof necessary to support the judgment under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Following a properly supported motion for summary judgment, it is the nonmovant's burden to show that there is sufficient evidence to support a jury verdict in its favor. Id. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). However, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. at 255. Further, where a party has been unable to exercise its opportunities for discovery, summary judgment is appropriate only in more narrow circumstances. See Fed.R.Civ.P. 56(f); National Life Ins. Co. v. Solomon, 529 F.2d 59, 61 (2d Cir.1975).
 
 III
 
 6
 The legal basis for the district court's invalidity determination as to claims 1, 3, and 4 was 35 U.S.C. Sec. 102 (1988), subsections (a), (b) and (g), each subsection in the alternative, as well as 35 U.S.C. Sec. 103 (1988), also in the alternative. As for claim 2, the basis was Sec. 103. We need only address Sec. 102(a) and Sec. 103. Because of a patent's presumed validity under 35 U.S.C. Sec. 282 (1988), a challenger to the patent's validity must prove, by clear and convincing evidence, the necessary facts in support of a finding of prior knowledge or use under Sec. 102(a). Soundscriber Corp. v. United States, 360 F.2d 954, 960, 148 USPQ 298, 301, 149 USPQ 640 (Ct.Cl.1966). The critical date of such knowledge or use is the date of invention, which in this case was August 20, 1989. In order for there to be anticipation under Sec. 102, all of the elements and limitations of the claims must be found in the prior art. Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1576, 18 USPQ2d 1001, 1010 (Fed.Cir.1991).
 
 IV
 
 7
 Edmark first argues that summary judgment was not proper because Mr. Fosmire did not make a prototype tool with a loop of sufficient size to receive an entire hair tail, as required by the product claims and the method claims,[1] until after the critical date of August 20, 1989. We disagree. A hair tail from a child, or someone with thin hair, could certainly be received by the loop of the "Pony Tail'r" prototype that is pictured in the photographs taken some time in May or June of 1989. Further, the loop size of the prototype pictured in these 1989 photographs is no larger than the loops of prototypes that Mr. Fosmire made in September of 1987. Thus, we conclude that there is no genuine issue of material fact with respect to loop size of the alleged prior art.
 
 
 8
 Next, Edmark argues that summary judgment was not proper because, from the evidence of record, a reasonable jury could have inferred that Mr. Fosmire kept his hair-styling prototypes and his related activities out of the public domain until well after Ms. Edmark filed her patent application. See Carella v. Starlight Archery & Pro Line Co., 804 F.2d 135, 139, 231 USPQ 644, 646 (Fed.Cir.1986) ("The statutory language, 'known or used by others in this country' (35 U.S.C. Sec. 102(a)), means knowledge or use which is accessible to the public."). Again, we disagree. Although Mr. Fosmire allegedly was advised by a patent attorney that he needed to keep his hair-styling tool and method a secret in order to preserve his patent rights, from the evidence of record, there can be no doubt that he was attempting, long before the critical date, to commercialize both his tool and his method, and that he was doing so publicly. This conclusion is supported by the deposition testimony of Mr. Fosmire, Deanna Fosmire, his brother's wife, and Linda Kastner, and by the declaration testimony of eleven other individuals (Joanne Whitelaw, Mary Crosby, Peggy O'Neill Smith, Judi Elder, Allison Mitchell, Julie Harbour, Amy Valdez, Barbara Lynne Johnson, Tammie Johnson Fulmer, Stephen Brown, and Sandra Trejo Brown). We note in particular the deposition testimony of Ms. Kastner. Ms. Kastner was a customer of Mr. Fosmire's in September of 1988 when he was working at "Images" in Santa Ynez, California. She testified that Mr. Fosmire first showed her a prototype of his "Pony Tail'r" and demonstrated its use in October or November of 1988. The other testimonial evidence submitted by Telebrands is consistent with this testimony of Ms. Kastner. The conclusion that Mr. Fosmire thrust his prototypes and method into the public domain becomes inescapable when one views the testimonial evidence in light of the documentary evidence of record (not contested by Edmark) which shows the various prototypes that Mr. Fosmire made (e.g., the tool shown in the photographs taken in May or June of 1989), and which pinpoints when these prototypes were made.
 
 
 9
 Edmark makes an additional argument that applies to only the method claims. After pointing out that claims 3 and 4 recite a method of using the hair-styling tool to invert a hair tail, Edmark argues that there is a genuine issue of material fact as to whether Mr. Fosmire put his "Pony Tail'r" to such a use prior to the critical date. We agree. In addition to the deposition testimony of Mr. Fosmire, Telebrands offered the declaration testimony of eight individuals associated with Mr. Fosmire (Whitelaw, Elder, Mitchell, Harbour, Valdez, Fulmer, and the two Browns) to establish that Mr. Fosmire so used his "Pony Tail'r". However, unlike the case of the product claims, here the documentary evidence directly contradicts the testimonial evidence. Specifically, the documentary evidence tends to show that, prior to the critical date (and perhaps even up until the time that Mr. Fosmire became apprised of Ms. Edmark's "Topsy Tail"), Mr. Fosmire employed only the so-called "wrap-around" method with his hair-styling tool. With this method, only a strand of the hair tail (i.e., not the entire hair tail) is wrapped around the rubber band or like device used to bind the hair tail and only the strand is placed through the loop of the tool. With this method, it appears that the reason that the rubber band is hidden from view is because the strand of hair is wrapped around, and thus covers, the rubber band, not because the hair tail is inverted. Only the "wrap-around" method is disclosed in the following documents: (1) the description of the "Pony Tail'r" dated March 24, 1988, which Mr. Fosmire mailed to himself; (2) the photographs taken in May or June of 1988; (3) the instructions prepared by Mr. Fosmire to accompany his "Pony Tail'r" product; and (4) the disclosure document that Mr. Fosmire filed with the Patent and Trademark Office in 1992. Clearly, the "wrap-around" method is not the method of claims 3 and 4. Thus, we cannot sustain the district court's summary judgment holding that the prior art contains, so as to anticipate under Sec. 102(a), each and every element or limitation of the method claims. Further, because the issue of whether the "inversion" method is obvious in view of the "wrap-around" method has not been directly addressed by the parties or the district court, we cannot sustain the district court's alternative holding that the method claims are invalid under Sec. 103.
 
 
 10
 To summarize, we conclude that there is no genuine issue of material fact so as to preclude a holding that various prototypes of the "Pony Tail'r" were in the prior art under Sec. 102(a) and that these prototypes anticipate claim 1, the independent product claim, of the Edmark patent. Further, because Edmark does not identify any reason why dependent claim 2 is not, as the district court held, an obvious variation of claim 1, we conclude that it has not met its burden in opposing summary judgment as to claim 2 either. Accordingly, we affirm the judgment of invalidity with respect to claims 1 and 2. However, because we conclude there is a genuine issue of material fact as to whether Mr. Fosmire, prior to the critical date, used his "Pony Tail'r" by the method claimed in the patent, we vacate the grant of summary judgment of invalidity as to claims 3 and 4, and remand for further proceedings consistent with this opinion.
 
 
 11
 Each party shall bear its own costs.
 
 
 
 [1]
 We interpret the claim language "a hair tail" to mean the entire hair tail. The specification discloses that "hair tails can be ponytails, pigtails, puppy tails and puppy ears and the like." (Col. 2, lns. 7-8.) Further, nowhere does the specification suggest that anything less than the entire hair tail is threaded through the loop