**SANDISK CORPORATION, Plaintiff,**

v.

**LEXAR MEDIA, INC., Defendant.**

**No. C 98–1115 CRB.**

United States District Court, N.D. California.

March 28, 2000.

Kenneth B. Wilson, James C. Yoon, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for plaintiff.

J. Thomas Rosch, Richard J. Mooney, Nicole E. Jaeger, Latham & Watkins, San Francisco, CA, Mark A. Flagel, Bruce Kuyper, Latham & Watkins, Los Angeles, CA, Charlene M. Morrow, Albert C. Smith, Patricia M. Downey, Daniel A. Johnson, Fenwick & West LLP, Palo Alto, CA, for defendants.

## MEMORANDUM AND ORDER

BREYER, District Judge.

This is an action for infringement of Patent No. 5,602,987 (the "'987"). Now before the Court is plaintiff's motion for partial summary judgment of defendant's contributory infringement of Claim 10 of the '987 and defendant's cross-motion for summary judgment of non-infringement, as well as defendant's motion for summary judgment of the invalidity of Claim 10 of the '987. After carefully considering the papers filed by the parties, and having had the benefit of oral argument on March 17, 2000, plaintiff's motion for summary judgment of contributory infringement is GRANTED and defendant's cross-motion is DENIED. Defendant's motion for summary judgment of invalidity is also DENIED.

## BACKGROUND

The parties are competitors in the flash memory storage card market, also referred to as a "PC Card." The memory cards are long-term non-volatile memory for computer systems, such as desktop computers, palm pilots, and digital cameras.

### A. *The Lawsuit*

The '987 is owned by plaintiff Sandisk Corporation ("Sandisk"). The '987 describes a non-volatile computer memory system. Sandisk's lawsuit alleges that the PC Cards manufactured by defendant Lexar Media, Inc. ("Lexar") contributorily infringe the '987.

By order filed March 4, 1999, the Court construed the disputed claims of the '987. Sandisk subsequently moved for partial summary judgment on the ground that Lexar's PC Cards contributorily infringe Claim 10 of the '987 because when a consumer operates a digital camera with a Lexar PC card, the consumer "practices" every element of Claim 10. After the Court continued Sandisk's motion pursuant to Federal Rule of Civil Procedure 56(f) at Lexar's request, Lexar filed a counter-motion for a ruling that it does not infringe Claim 10 as a matter of law. Lexar also filed a motion for summary judgment of the invalidity of Claim 10. Those three motions are now before the Court.

### B. *Claim 10*

Claim 10 of the '987 patent reads as follows [1]:

A method of operating a computer system including a processor and a memory system, wherein the memory system includes an array of non-volatile floating gate memory cells partitioned into a plurality of sectors that individually include a distinct group of said array memory cells that are erasable together as a unit, comprising:

(a) providing said memory array and a memory controller within a card that is removably connectable to the computer system, said controller being connectable to said processor for con-

---

**1.** The Court has identified each separate "element" or "step" of Claim 10 by a letter to facilitate the discussion of distinct elements.

trolling operation of the array when the card is connected to the computer system,

(b) partitioning the memory cells within the individual sectors into at least a user data portion and an overhead portion,

(c) causing the controller, in response to receipt from the processor of an address in a format designating at least one magnetic disk sector, to designate an address of at least one non-volatile memory sector that corresponds with said at least one magnetic disk sector,

(d) either writing user data to, or reading user data from, the user data portion of said at least one non-volatile memory sector, and

(e) either writing to, or reading from, said overhead portion of said at least one non-volatile memory sector, overhead data related either to said at least one non-volatile memory sector to data stored in the user data portions of said at least one non-volatile memory sector.

'987 Patent at 17:30–57.

## DISCUSSION

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S.

317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all reasonable inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997). However, an inference may be drawn in favor of the non-moving party only if the inference is "rational" or "reasonable" under the governing substantive law. *See Matsushita*, 475 U.S. at 588, 106 . S.Ct. 1348.

## II. CROSS–MOTIONS RE: CONTRIBUTORY INFRINGEMENT

### A. *Applicable Law*

#### 1. *Patent Infringement*

A determination of patent infringement involves a two-step inquiry: (1) a determination of the meaning and scope of the asserted claims, and (2) a comparison of the properly construed claims to the allegedly infringing devices. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). If the accused device does not contain each and every limitation of the claim, or its equivalent, there can be no infringement. *See Warner Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Absence of a single limitation of a claim is sufficient to avoid infringement of that claim. *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed.Cir.1991) ("To establish infringement, every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent").

While summary judgment of infringement may be appropriate in certain circumstances, *see, e.g., Hay & Forage Indus. v. New Holland N. Am.*, 25 F.Supp.2d 1195, 1200 (D.Kan.1998), the Federal Circuit has cautioned trial judges to approach a summary judgment motion of liability of infringement carefully:

> Because, however, infringement is itself a fact issue, a district court must approach a motion for summary judgment of infringement or non-infringement with a care proportioned to the likelihood of its being inappropriate. Though speedy and inexpensive, summary judgment is nonetheless a "lethal weapon" capable of "overkill."

*SRI Int'l v. Matsushita Electric Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985).

### 2. *Contributory Infringement*

■ The patent statute provides that [w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). There can be no contributory infringement in the absence of direct infringement. *See Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341–42, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) ("if there is no direct infringement of a patent there can be no contributory infringement"). Accordingly, the Court can conclude that Lexar engaged in contributory infringement only upon a determination that some third-party directly infringed the '987 patent.

■ A plaintiff asserting contributory infringement must prove four elements: (1) the defendant sold a component or material for use in practicing the patented method; (2) the component or material constitutes a material part of the invention; (3) the defendant knew that the item it sold was especially made or adapted for use in infringing the patented method; and (4) the item sold is not a staple article or commodity of commerce suitable for substantial noninfringing use. *See Hoffmann–La Roche v. Promega Corp.*, 33 U.S.P.Q.2d 1641, 1648, 1994 WL 761241 (N.D.Cal.1994).

### B. *Summary of Arguments*

Lexar makes five arguments as to why Sandisk's motion for summary judgment must be denied and Lexar's cross-motion granted.

First, Lexar contends that no user of the Lexar PC Cards practices element (b) of Claim 10 which requires partitioning of the non-volatile memory cells into user data and overhead portions. Lexar argues that the memory chips which Lexar purchases from Toshiba for use in Lexar's PC Cards are already "partitioned" into user data and overhead data portions and therefore the ultimate user (the digital camera user) cannot as a matter of law practice the "partitioning" element of Claim 10.

Second, Lexar argues that element (c) of Claim 10 requires a permanent "correspondence" between a non-volatile memory sector and a magnetic disk sector and that since the correspondence in Lexar's memory system is not fixed, its PC Cards do not contributorily infringe Claim 10 as a matter of law.

Third, Lexar asserts that its PC Cards do not "designate an address of at least one non-volatile memory sector" as is required by element (c) of Claim 10, or, in the alternative, that there is at least a factual dispute as to whether they do.

Fourth, Lexar claims that it does not contributorily infringe because digital cameras are not "computer systems" within the meaning of Claim 10.

Finally, Lexar insists that summary judgment in favor of Sandisk is precluded because there is a genuine factual dispute concerning whether "Lexar intended that its accused products be used to infringe the patent."

### C. Analysis

#### 1. Issue No. 1: Partitioning The Memory Cells

■ Lexar contends that the third-party at issue here—the Lexar PC Card digital camera consumers—does not partition "the memory cells within the individual sectors into at least a user data portion and an overhead portion," as is required by element (b). Lexar argues that element (b) is practiced by the manufacturer of the memory chip (Toshiba), rather than by the end-user. In other words, Toshiba, not the end-user, partitions the memory cells within the individual sectors into at least a user data portion and an overhead portion. Since the end-user does not practice this element of Claim 10, the argument goes, there is no direct infringement and thus no contributory infringement as a matter of law.

##### a. Lexar's device partitions the memory cells

The Court concludes that it is undisputed that Lexar's memory system, when placed in operation by the digital camera user, partitions memory cells into user data portions and overhead portions. Lexar's own witnesses testified that the Toshiba chip does not *require* a user data portion and an overhead portion. For example, Lexar contends that the Toshiba chip is already physically partitioned into a 512 byte user data portion and a 16 byte overhead portion. However, Lexar's expert witness, Dr. William Gosney, Jr., testified that "you could have a user that buys the Toshiba chip, configures OP at the ground so that you have 528 bytes per page, and you could store 528 bytes ·of user data in that 528 bytes." Gosney Dep. II at 95:3–6. In such a situation, the

"sector" would logically have only a user data portion, and not a user data portion *and* an overhead portion as is required by the '987. Dr. Gosney also testified that if the Toshiba chip were operating in 512 byte mode, and the user wanted to store 512 bytes of user data to a particular page, there would be no room for overhead in that page. Gosney Dep. II at 49–51.

In other words, when used in the 512–byte mode, the Toshiba memory chip user can store 512 bytes of user data with no overhead or any other kind of data. When the chip is operating in 528–byte mode, the user can read or write 512 bytes of user data plus 16 bytes of other data, including overhead, to a single page. However, the chip user (Lexar) decides what data will be written to each page. Thus, it is the Lexar memory controller, not the Toshiba memory chip, that logically "partitions" each page into a user data portion and an overhead portion. The Toshiba chip has predetermined that if a user is going to store overhead in a page, it can store only 16 bytes of such data, but the chip does not require that _any_ overhead be stored in a page.

##### b. Estoppel

In a letter sur-reply Lexar argues that Sandisk has changed its position; that in prior submissions it alleged that the Toshiba memory chip, not the Lexar memory controller, partitions each sector into a user data portion and an overhead portion. Lexar cites (1) Sandisk's claim construction statement, (2) Sandisk's memorandum in support of summary judgment, and (3) the declaration of Dr. Hoff, Sandisk's expert, to support its "estoppel" argument.

None of Sandisk's representations in these documents suggests that Sandisk has changed its position. In each statement Sandisk does not identify "what" is doing the partitioning. For example, in the claim construction statement Sandisk asserts as follows: "The Accused Lexar

Flash Cards utilize flash memory that is partitioned into a user data portion and an overhead data portion (Toshiba/Samsung flash memory chips)." The statement is in the passive tense; it does not identify "what" does the partitioning. Thus, it is consistent with Sandisk's theory that the Lexar controller partitions the memory cells in the Toshiba chip into a user data portion and an overhead portion. The other statements identified by Lexar are consistent with Sandisk's theory for the same reason.

In sum, as there is no genuine dispute that the Lexar memory controller (when placed in operation by a digital camera user) logically partitions memory cells into user data portions and overhead portions, Sandisk has established as a matter of law that Lexar's device practices the "partitioning" requirement of element (b) of Claim 10 of the '987.

**2. _Issue No. 2: Address That Corresponds_**

Element (c) of Claim 10 requires as follows:

> causing the controller, in response to receipt from the processor of an address in a format designating at least one magnetic disk sector, _to designate an address of at least one non-volatile memory, sector that corresponds with said at least one magnetic disk sector,_

'987 Patent at 17:45–49 (emphasis added).

Lexar argues that its device does not practice this element of Claim 10 because the claim requires a "fixed" correspondence between the disk sector address provided by the host system and the address of a sector of non-volatile memory. Lexar's device uses a "dynamic" addressing scheme; there is no fixed correspondence between the address the host sends to the controller and the address of the page of memory that is accessed. This is because once Lexar's device receives a magnetic disk drive address from the host computer there is no specific non-volatile memory sector address designated. In-

stead, Lexar's system searches for the next available block of data in the memory. In the device manufactured by Sandisk, in contrast, each magnetic disk address corresponds to a _particular_ non-volatile memory sector, except that if the non-volatile memory sector is defective, a new non-volatile memory sector is designated.

■ Lexar's argument is foreclosed by the Court's construction of Claim 10 and by the intrinsic evidence. First, in connection with the Claims Construction proceedings, Lexar argued that "correspondence" means a "direct, one-to-one correspondence." The Court rejected this argument when it construed the term "correspond" to mean that a "non-volatile memory sector may correspond to one or more magnetic disk sectors." Second, to the extent Lexar's "permanent correspondence" argument is somehow different from the argument it made at the Claim Construction hearing, its interpretation of "corresponds" is at odds with the plain language of Claim 10. _See Comark Communications, Inc. v. Harris Corp._, 156 F.3d 1182, 1186 (Fed. Cir.1998) ("The appropriate starting point . . . is always with the language of the asserted claim itself"). Nothing in Claim 10 requires that the correspondence be permanent or fixed. Even the dictionary definition cited by Lexar in its Opposition does not suggest that the correspondence must be permanent.

■ Lexar nonetheless argues that the patent specifications limit "correspond" to "permanently corresponds." _See_ 35 U.S.C. § 112. This argument, too, is meritless. "[L]imitations from the specification are not to be read into the claims." _Comark Communications_, 156 F.3d at 1186. Lexar's reliance on _Wang Labs., Inc. v. America Online, Inc._, 197 F.3d 1377, 1380–83 (Fed.Cir.1999), is unavailing. _Wang Labs, Inc_, involved the construction of a "means-plus-function" claim, not a "method" claim, as is Claim 10 of the '987. _Id._ at 1380–83. Method claims, unlike means-plus-function claims, are not limited

to the structures disclosed in a specification for the performance of the method. *See O.I. Corp. v. Tekmar Co. Inc.,* 115 F.3d 1576, 1583 (Fed.Cir.1997); *see also Comark Communications,* 156 F.3d at 1186 (method claim).

■ The prosecution history also does not compel the interpretation urged by Lexar. "Unless altering claim language to escape an examiner rejection, a patent applicant only limits claims during prosecution by clearly disavowing claim coverage." *See York Prods., Inc. v. Central Tractor,* 99 F.3d 1568, 1575 (Fed.Cir.1996) (holding that "inventor's conduct during the administrative process for acquiring a patent did not evince a clear disavowal of claim scope"). The prosecution history identified by Lexar does not demonstrate a clear disavowal of a dynamic addressing scheme.

### 3. *Issue No. 3: Designating The Address Of A Sector*

Lexar also contends that its device does not cause the controller to designate the address of at least one non-volatile memory *sector,* as is required by element (c). In Lexar's device, the memory is divided into "blocks" and each "block" is divided into 16 or 32 "pages." Each page corresponds to a magnetic disk sector. In the Claim Construction Order the Court held that a "non-volatile memory sector" is the "basic unit of erase for the non-volatile memory." In the Lexar device, however, the basic unit of erase is a "block." Thus, a "block" in the Lexar device is a "sector" in the '987 as "sector" is defined in the Claim Construction.

■ Lexar argues that since its device reads and writes to a "page," its controller designates an address of a "page" rather than a "block." Therefore, Lexar's controller does not designate the address of at least one non-volatile memory *sector,* as is required by element (c) of Claim 10 and summary judgment in favor of Lexar must be granted. For Lexar's device to practice element (c) of Claim 10, Lexar's argu-

ment goes, its controller would have to read and write to a "block" instead of a "page," since a block is the basic unit of erase in Lexar's device.

The issue here is that Sandisk's "sector"—the basic unit of erase—corresponds to *one* magnetic disk sector, while in Lexar's device a "block"—the basic unit of erase—is partitioned into 16 or 32 pages, each of which corresponds to a magnetic disk sector. In other words, a Lexar "block" corresponds to more than one magnetic disk sector while a Sandisk "block" [sector] corresponds to only one magnetic disk sector. This difference, however, does not defeat literal infringement.

First, in order to "designate" an address of a page, Lexar's controller must first "designate" the address of the block in which the page is located. Thus, Lexar's controller does in fact identify the address of a sector [block]. Indeed, Lexar's non-infringement opinion letter describes Lexar's device as identifying a block address and a page within the block.

Second, the fact that each block has 16 or 32 pages, and thus multiple user data portions and overhead portions is of no consequence. The Court construed Claim 10 to require that each non-volatile memory sector [block] have "at least one user data portion and one overhead data portion, *but is not limited to only one data and only one overhead data portion."* Claim Construction Order at 4 (emphasis added).

### 4. *Issue No. 4: A Digital Camera Is Not A Computer System*

■ The '987 describes a method of operating a "computer system." According to Lexar, the patent describes a "computer system" as a system that includes (1) a microprocessor, (2) a main memory, (3) a memory system, and (4) input/output devices connected by a common system bus. Lexar contends that the digital camera in which its PC Card is used is not a "computer system" because Sandisk did not

specifically identify a digital camera as a computer system in the '987.

Lexar's argument is unpersuasive. Sandisk has produced evidence that Lexar's device includes each element of a computer system as defined by Lexar and Lexar has not challenged this evidence. Indeed, Lexar does not even argue that a digital camera does not include the elements of a computer system as Lexar defines such a system.

**5. *Issue No. 5: The Knowledge Requirement***

■ Finally, Lexar argues that it cannot have contributorily infringed because Sandisk has not proved as a matter of law that Lexar subjectively believed that the use of its PC Cards in digital cameras infringed the '987. Lexar misstates the law. All that is required for a finding of contributory infringement is (1) knowledge of the activity that is alleged to be infringing (here, use of the PC Cards in digital cameras), and (2) knowledge of the patent (here, the '987). *See Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1469 n. 4 (Fed.Cir.1990); *Nordberg Manufacturing Co. v. Jackson Vibrators, Inc.,* 153 U.S.P.Q. 777, 784–85, 1967 WL 7708 (N.D.Ill.1967) (noting that if subjective belief of infringement were required for a finding of contributory infringement, an infringer would be insulated from liability made prior to a final judgment of infringement), *rev'd on other grounds,* 393 F.2d 192 (7th Cir.1968). Lexar does not and cannot dispute that it knew both facts before this lawsuit was filed.

## II. VALIDITY

In a separate motion for summary judgment Lexar contends that Claim 10 of the '987 patent is invalid as a matter of law for two reasons. First, Lexar argues that Claim 10 was "anticipated" by a single prior art reference, primarily the '248 patent, and is therefore invalid under 35 U.S.C. sections 102(a) and 102(b). Second, even if Claim 10 was not anticipated, Lexar argues that it would have been obvious to one of ordinary skill in the art at the time of the alleged invention and thus is invalid under 35 U.S.C. section 103.

### A. *Burden of Proof*

■ A patent is presumed to be valid. *See* 35 U.S.C. § 282. As a result, Lexar must prove its invalidity defense by "clear and convincing evidence." *See Carella v. Starlight Archery & Pro Line Co.,* 804 F.2d 135, 138 (Fed.Cir.1986). Accordingly, Lexar is entitled to summary judgment only if no reasonable trier of fact could conclude that Lexar had not proved invalidity by clear and convincing evidence. Or, to put it another way, summary judgment must be denied if a reasonable trier of fact could conclude that Lexar had not proved invalidity by clear and convincing evidence.

### B. *Anticipation (35 U.S.C. § 102)*

The patent statute provides, in relevant part, that a patent is invalid if

(a) the invention was *known or used by others in this country,* or patented *or described in a printed publication in this or a foreign country,* before the invention thereof by the applicant for patent, or

(b) the invention was patented or *described in a printed publication in this or a foreign country* or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. § 102(a) & (b) (emphasis added).

In order to prove anticipation under section 102, Lexar must prove by clear and convincing evidence that "all of the elements and limitations of the claim are found within a single prior art reference." *Scripps Clinic and Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed. Cir.1991). Every element of the claim must be literally present in the prior art reference. *See Richardson v. Suzuki Motor Co.,* 868 F.2d 1226, 1236 (Fed.Cir.1989).

Unless all the elements are found in a single piece of prior art in exactly the same situation and united the same way to perform the identical function, there is no anticipation. *Id.* Moreover, to constitute anticipation, the prior art reference must describe the claimed invention in sufficient detail to place it in the possession of a person or ordinary skill in the field of the invention. *In re Spada,* 911 F.2d 705, 708 (Fed.Cir.1990).

Lexar contends that Claim 10 of the '987 patent was known by Dr. Yukun Hsia at McDonnell–Douglass Corporation and described by him in the '248 patent issued in 1983 and in published lecture notes of a series of lectures given by Dr. Hsia in China in 1984.

■ The Court concludes that there is a genuine dispute as to whether the '987 was anticipated by the above-described prior art. At a minimum, there is a genuine dispute as to whether the prior art disclosed the element of Claim 10 requiring the partitioning of a non-volatile memory sector into at least one user data portion and one overhead portion. Lexar has also not demonstrated by clear and convincing evidence that the prior art disclosed the use of floating gate memory cells, let alone demonstrate that no reasonable trier of fact could find otherwise.

### C. *Obviousness (35 U.S.C. § 103)*

Section 103 provides that a patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Secondary "objective" considerations are essential components of the obviousness determination. *See In re Denis Rouffet,* 149 F.3d 1350, 1355 (Fed.Cir. 1998). These secondary considerations include (1) the commercial success of the patented device, (2) the failure of others to develop the patented device, and (3) licens-

ing by competitors. *See id.* Secondary considerations of non-obviousness may be used to rebut a prima facie case of obviousness based on prior art references. *See WMS Gaming, Inc. v. Intern. Game Technology,* 184 F.3d 1339, 1359 (Fed.Cir. 1999).

■ As with anticipation, there is a genuine dispute as to whether Lexar has proved by clear and convincing evidence that the '987 was obvious and no reasonable trier of fact could find otherwise.

First, while Lexar's experts declare that based on Dr. Hsia's memory system and other prior art the '987 would have been obvious to one skilled in the art, Sandisk's experts declare that Dr. Hsia's prior art actually teaches away from the '987. The Court cannot resolve this dispute on summary judgment. For this reason alone Lexar's motion must be denied.

Second, the secondary considerations also preclude summary judgment. Sandisk has produced evidence that its products which incorporate Claim 10 of the '987 have been a commercial success and that competitors who have tried to market similar products that do not include Claim 10 have failed. There is also evidence in the record that Sandisk's competitors have licensed the '987 technology. That competitors are willing to pay millions of dollars to license the '987 is evidence that the '987 was not obvious.

Lexar contends that Sandisk has not shown that the commercial success of its memory cards is casually related to Claim 10. But Sandisk has offered evidence that competitors that attempted to market flash memory cards that did not include the elements of Claim 10 failed. That evidence supports an inference that the elements of Claim 10 have contributed to the success of Sandisk's cards; on summary judgment the Court must draw that inference.

Lexar also challenges Sandisk's "licensing" evidence, noting that the licenses are for all of Sandisk's patent portfolio, not just the '987. That argument goes to the weight of Sandisk's evidence and does not

compel summary judgment on a factual determination which Lexar must prove by clear and convincing evidence.

## CONCLUSION

For the foregoing reasons Sandisk's motion for summary judgment of contributory infringement is GRANTED and Lexar's counter-motion for summary judgment of non-infringement is DENIED. The undisputed evidence establishes that Lexar's memory device, when placed in operation by a digital camera user, practices each element of Claim 10 of the '987.

Lexar's motion for summary judgment of invalidity is also DENIED. Based on the record presently before the Court, a reasonable trier of fact could conclude that Lexar had not proved invalidity by clear and convincing evidence.

**IT IS SO ORDERED.**