Andrew **PICKHOLTZ**, Plaintiff,

v.

**RAINBOW TECHNOLOGIES, INC., et al., Defendants.**

No. C 98–2661 CRB.

United States District Court, N.D. California.

Dec. 15, 2000.

---

Andrew Pickholtz, San Francisco, CA, pro se.

Mark R. Clements, Mark F. James, Brent O. Hatch, Hatch James & Dodge P.C., Salt Lake City, UT, for plaintiff.

Thomas L. Blasdell, Foley & Lardner, Los Angeles, CA, for defendants.

## MEMORANDUM AND ORDER

BREYER, District Judge.

This is a lawsuit for infringement of United States Patent No. 4,593,353 (the '353) issued on June 3, 1986. The '353 describes an apparatus for protecting against the unauthorized use of computer software. Plaintiff accuses defendants' "keys," also known as "dongles," marketed under the brand name "Sentinel," of infringing the '353. Now before the Court are the parties' cross-motions for summary judgment.

## BACKGROUND

The '353 includes two claims. Claim 1 provides in its entirety:

1. A software protection apparatus using first and second authorization codes and a pseudorandom number, said software protection apparatus for use with a computer, comprising:

an external memory device having computer software and a first authorization code and a second authorization code at selected data locations, wherein said second authorization code is part of a pseudorandom sequence;

means for reading said external memory device, said means located in the computer;

pseudorandom number generator device located in the computer and coupled to said reading means, for generating a pseudorandom number in response to said reading means reading said first authorization code from said external memory device, said first authorization code being read prior to execution of said computer software, said pseudorandom number generator device including a sealed casing, thereby preventing identification of the pseudorandom number generator algorithm;

processing means located in the computer and coupled to said reading means and said pseudorandom number generator device, for comparing the pseudorandom number generated by said pseudorandom number generator device with the second authorization code read from selected data locations in said external memory device, said processing means generating an enable signal in response to a positive comparison of the pseudorandom number with the second authorization code for enabling execution of the computer software stored in said external memory device.

Claim 2 describes in its entirety: "The software protection apparatus in claim 1 wherein said external memory device includes a floppy disc."

In connection with the Claims Construction hearing the parties disputed, among other things, whether "computer" includes peripherals and other devices connected electronically to and communicating with the processing units. The Court concluded that "computer" as used in the claims of the '353 does not include peripherals and construed "computer" to mean "the CPU and main memory on the CPU's circuit board, which, taken together, form a part of a dedicated microcomputer system capable of executing instructions on data, and which exclude connected peripheral devices." April 2000 Memorandum and Order (hereinafter "Order") at 4–7, 16. The Court likewise construed "located in the computer"—another disputed phrase—to mean "located in the CPU or main memory or on the CPU Circuit Board." Order at 10.

Defendants now move for summary judgment on the ground that the accused devices do not literally infringe the limitation that the device comprise a "pseudorandom number generator device located in the computer," and that they also do not infringe under the doctrine of equivalents. Plaintiff has filed a cross-motion for summary judgment seeking a determination that the accused products infringe the '353 as a matter of law.

## DISCUSSION

### I. STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the case. *See id.* at 248, 106 S.Ct. 2505. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995), and noting that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## II. INFRINGEMENT ANALYSIS

■ A patentee may show infringement either by showing that an accused product literally infringes a claim in the patent or that the product infringes under the doctrine of equivalents. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed.Cir.1995) (noting that an "accused product that does not literally infringe a claim may infringe under the doctrine of equivalents . . ."). Whether an accused product infringes is ordinarily an issue of fact for the jury. *See id.* at 1575 (noting that both literal infringement and infringement under the doctrine of equivalents are factual issues).

### A. Literal Infringement

■ To determine whether an accused device literally infringes a patent right, the Court must perform a two-step analysis: first, it must construe the claims to determine their meaning and scope, and second, it must compare the claims as construed to the accused device. *See id.* ("In the second step, the trier of fact determines whether the claims as thus construed read on the accused product."). The Court completed the first step in its Claims Construction Order, and now must compare the claims as interpreted to defendants' dongles. To establish literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Id.; see also Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed.Cir. 1998) ("If even one limitation is missing or not met as claimed, there is no literal infringement").

■ Defendants contend that its products do not infringe as a matter of law because they do not include a "pseudorandom number generator device located in the computer," a limitation of the '353. A "pseudorandom number generator" ("PRN") is hardware that generates, in a deterministic fashion, a sequence of numbers that appear to be random. Order at 16. Assuming defendants' dongles include a PRN, they nonetheless contend that their devices do not infringe because the dongles (and thus the PRN) are indisputably not "located in the computer" as is required by the '353.

The Court agrees. Defendants' devices are attached to input/output ports which in turn are attached to a computer, just like a printer, monitor or other peripheral. Thus, to the extent defendants' dongles each contain a PRN, that PRN is not "located in the computer," as the Court has construed that term. Rather, the dongles, and thus the PRN in the dongles, are electronically connected to the computer, that is, electronically connected to the "the CPU and main memory on the CPU's circuit board, which, taken together, form a part of a dedicated microcomputer system capable of executing instructions on data."

Plaintiff's expert's conclusion that the dongles are located "on the CPU circuit board" because the CPU, main memory,

and the dongles are all rigidly affixed to sockets that are "rigidly affixed to the CPU circuit board" does not create a *genuine* dispute of material fact. Plaintiff is simply rearguing his unsuccessful claim construction position. The Court specifically construed the term "computer" to exclude peripherals such as the dongles. Order at 16. The Court also excluded from the term "computer" everything that is electronically attached to the computer. *Id.* at 6.

Plaintiff's repeated assertion that the Court construed "located in the computer" to mean "electronically connected to the computer" grossly mischaracterizes the Court's Order. Plaintiff's assertion is based on a phrase found in the following paragraph:

> [T]he claim also repeatedly uses the term "located in the computer," for example, the pseudorandom number ("PRN") generator device is "located in the computer." If "computer" is interpreted as broadly as plaintiff urges, "located in the computer" is unnecessary; the PRN device must be located in the computer, that is, it has to be connected electronically to the controller and main memory. *Thus, computer as used in claim 1 cannot simply mean connected electronically to the controller and main memory.*

Order at 5–6 (emphasis added). The Order was unequivocal; computer does not mean connected electronically to the controller. The purpose of the paragraph was to explain that if "computer" is interpreted so broadly as to include everything electronically connected to the microprocessing system, the phrase "located in the computer" is mere surplusage since the PRN device must be electronically connected to the microprocessing system in order for the device to work. Thus, "located in the computer" must mean something more than simply electronically connected to the microprocessing system.

In sum, defendants' dongles, which attach to a computer through input/output channels, are not "located in the computer"

as a matter of law. Accordingly, defendants' motion for summary judgment of literal non-infringement must be granted and plaintiff's cross-motion must be denied.

## III. THE DOCTRINE OF EQUIVALENTS

Defendants have also moved for summary judgment that their products do not infringe under the doctrine of equivalents. Under that doctrine, a product that does not literally infringe a patent claim may still infringe if each and every limitation of the claim is literally or equivalently present in the accused device. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) ("In our view, the particular linguistic framework used is less important than whether the test is probative of the essential inquiry: Does the accused product or process contain elements identical or equivalent to each claimed element of the patented invention?").

Whether an element of an accused product (or the product itself in its entirety) infringes under the doctrine of equivalents depends in part on whether that component (and the device overall) performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result. *See Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed.Cir.1998); *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934–35 (Fed.Cir.1987) (en banc) ("Under the doctrine of equivalents, infringement may be found (but not necessarily) if an accused device performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention."), *cert. denied*, 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). If the differences between a claim and an accused device are "insubstantial" to one with ordinary skill in the art, the product

may infringe under the doctrine of equivalents. *See Ethicon,* 149 F.3d at 1315; *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423 (Fed.Cir.1997). The doctrine prevents an accused infringer from avoiding infringement by changing minor details of a claimed invention while retaining its essential functionality. *See id.* at 1424.

■ As with literal infringement, infringement under the doctrine of equivalents is a question of fact for the jury, so summary judgment is only appropriate where no reasonable jury could determine that two elements are equivalent. *See Sage,* 126 F.3d at 1424–26. Also, defendants need only show that the accused devices do not contain one of the limitations in the '353 patent; if the dongles lack an equivalent to the '353's limitation that the PRN device be located in the computer, defendants' devices do not infringe.

Defendants contend that no reasonable jury could find that its devices contain the equivalent to a "PRN device located in the computer." They also argue that plaintiff is barred from asserting infringement under the doctrine of equivalents based on prosecution history estoppel and the Federal Circuit's recent opinion in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 234 F.3d 558 (Fed.Cir.2000) (en banc). While *Festo* was decided after plaintiff filed his opposition to defendants' motion for summary judgment and his own cross-motion for summary judgment, he had an opportunity to address its applicability to his case in his reply memorandum in support of his cross-motion for summary judgment.

### A. The *Festo* Test

■ In *Festo,* the Federal Circuit created a new test for when an amendment to a patent application bars a patentee from asserting infringement under the doctrine of equivalents for the amended claim limitations. *Festo* establishes a four-part inquiry. *Id.* at 570. First, a district court must determine which claim limitations are alleged to be met by equivalents. *Id.* Second, the court must ascertain whether those limitations were amended during prosecution of the patent. If some of the relevant limitations were not amended, the patentee may assert infringement under the doctrine of equivalents for those unaltered limitations. *Id.*

Third, for the claim limitations that were amended, the court must consider whether the amendments "narrowed the literal scope of the claim." *Id.* If an amendment did not narrow the literal scope of a limitation, the patentee may still assert infringement under the doctrine of equivalents for that limitation. Fourth, if an amendment did narrow the literal scope of a claim, then the patentee bears the burden of establishing—through the prosecution history itself and not through extrinsic evidence—that the amendment was unrelated to one of the statutory requirements for patentability. *Id.* at 564, 570. If the patentee can demonstrate that the amendment was unrelated to patentability, the amendment does not create prosecution history estoppel and the patentee may still assert infringement under the doctrine of equivalents. *Id.* at 586. However, if the amendment was related to patentability or the patentee is unable to explain the reason for the amendment by citing the prosecution history alone, then amendment-based estoppel applies and application of the doctrine of equivalents is completely barred. As a result, no range of equivalents is available for the amended claim limitation, and the patentee can only establish infringement if the literal terms of the limitation read on the accused device. *Id.* at 570.

### B. The Prosecution History Of The '353

Plaintiff's original application, filed in 1981, did not include the limitation "located in the computer." On August 16, 1984, the PTO examiner for the third time rejected plaintiff's claims as obvious in light of the prior art. For the first time the PTO examiner referenced as prior art the

*"Thomas* patent." In particular, the PTO examiner stated that the *Thomas* patent is "all but identical" to plaintiff's claimed invention. The *Thomas* patent in fact described a " 'security device which must be operatively connected to the purchaser's computer.' "

In response to the examiner's rejection, plaintiff significantly narrowed his claims to include spatial limitations, including the limitation that the PRN be "located in the computer." In a written response, plaintiff specifically distinguished his patent from the *Thomas* patent on the ground that the *Thomas* patent "does not have ... a pseudorandom number generator device located in the computer." *Id.* at 3. The PTO examiner subsequently renewed his objection based upon the *Thomas* patent. Plaintiff reasserted his claims and asked for allowance of his claims based on the arguments he had previously made, including his argument that the *Thomas* patent does not have a PRN located in the computer. The PTO examiner subsequently allowed the claims as plaintiff had amended them.

## C. Festo Bars Plaintiff's Equivalence Argument

■ Applying *Festo's* four-part inquiry to the prosecution history of the '353 demonstrates that prosecution history estoppel bars plaintiff's contention that defendants' devices contain an equivalent to the PRN being located in the computer.

First, the Court must identify the claim limitation alleged to be met by equivalents; here, it is having the PRN "located in the computer."

Second, the Court must determine whether the limitation was amended. It is undisputed that the limitation that the PRN is "located in the computer" was added by amendment; indeed, the limitation did not exist until after the PTO examiner rejected plaintiff's application in light of the *Thomas* patent.

Third, the Court must determine whether the amendment narrowed the scope of the literal claim. Prior to the amendment,

plaintiff's application included six claims. Four of the six claims described an invention with a PRN without any limitation as to where the PRN was located. One claim referred to a PRN "at the data processing center." After the PTO examiner rejected all six of plaintiff's claims as obvious in light of *Thomas,* plaintiff canceled his six claims and submitted, as an amendment to his application, a new claim which for the first time referred to a PRN *located in the computer.* The amendment thus narrowed the scope of plaintiff's claim. Accordingly, the burden is on plaintiff to show—based on prosecution history and not on extrinsic evidence—that his amendment was unrelated to patentability.

Fourth, plaintiff has not and cannot meet his heavy burden. His response to the PTO examiner's rejection of his application was to distinguish *Thomas* on the ground that *Thomas* does not include a PRN *located in the computer.* It is hard to imagine a more clear statement of an amendment based on patentability.

Plaintiff submits the declaration of the attorney who prosecuted his patent as evidence that the amendment was unrelated to patentability. The attorney attests that he added the phrase "located in the computer" to "clarify" the distinctions between plaintiff's patent and the prior art. He explains further that the statement—pseudorandom number generator device located in the computer—"distinguishes the prior art from the Pickholtz patent."

■ The attorney's declaration does not create a genuine dispute for several reasons. First, it is inadmissible under *Festo.* Under *Festo,* the plaintiff must prove that the amendment was made for reasons unrelated to patentability based on prosecution history, that is, the information available to the public. Plaintiff's attorney's declaration, made more than 15 years after plaintiff amended his claims, is not part of the prosecution history.

Second, the attorney attests that he was merely clarifying that the terms as origi-

nally drafted were intended to mean PRN located in the computer. This is an admission that the claims as originally drafted did not limit the PRN to being located in the computer; if it did there would be no need for a clarification. Moreover, it is also an admission that the amendment was related to patentability since the second paragraph of section 112 requires that the claims distinctively define the invention. In other words, the amendment narrowed the claim as originally drafted, even if plaintiff subjectively believed that the original claim was identical to the amended claim.

Third, the attorney admits that the clarification was necessary to distinguish the prior art. Thus, the amendment—what the attorney refers to as a clarification—was, according to plaintiff's own witness, done for reasons of patentability. Thus, under *Festo* (and, indeed, under the prior law) the amendment is a complete bar to the assertion of the doctrine of equivalence.

Plaintiff also points to the prosecution history as evidence that the real distinction he was making between *Thomas* and his invention was that his invention has a PRN in a sealed casing and *Thomas* did not; the location of the PRN was irrelevant. This argument is contradicted by the prosecution history. Plaintiff distinguished his invention from *Thomas* on the ground that his invention describes a device with a PRN located in a computer. He also *separately* distinguished his invention on the ground that it has a PRN in a sealed casing. Thus, the prosecution history does not support plaintiff's assertion that he did not distinguish his patent on the ground it describes a device with a PRN located in the computer.

Moreover, if plaintiff's amendment of the "located in the computer" language was meaningless, there is nothing in the prosecution history that explains why the language was included. Under *Festo*, this lack of an explanation operates as a complete bar to application of the doctrine of equivalents. *Id.* at 569. Of course, plain-

tiff's inadmissible extrinsic evidence gives an explanation; the amendment was for reasons of patentability.

## CONCLUSION

No rational jury could find that the accused products infringe the '353 literally or under the doctrine of equivalents. Accordingly, defendants' motion for summary judgment is GRANTED and plaintiff's cross-motion for summary judgment is DENIED.

IT IS SO ORDERED.