**Andrew PICKHOLTZ, Plaintiff,**

**v.**

**RAINBOW TECHNOLOGIES, INC.;**
**Software Security, Inc., and**
**Does 1–10., Defendants.**

**No. C 98–2661 CRB.**

United States District Court,
N.D. California.

May 1, 2003.

See also 284 F.3d 1365.

Andrew Pickholtz, San Francisco, CA, pro se.

Mark R. Clements, Mark F. James, Brent O. Hatch, Hatch James & Dodge P.C., Salt Lake City, UT, Vincent M. De-Luca, Rothwell Figg Ernst & Manbeck, P.C., Washington, DC, for plaintiff.

Thomas L. Blasdell, Foley & Lardner, Los Angeles, CA, for defendants.

## MEMORANDUM AND ORDER

BREYER, District Judge.

This suit involves the alleged infringement by defendants Rainbow Technologies, Inc. and Software Security, Inc. ("Rainbow") of U.S. Patent No. 4,593,353 ("the '353 patent") owned by plaintiff Andrew Pickholtz. Now before the Court is Rainbow's motion for summary judgment of non-infringement and Rainbow's motion for partial summary judgment regarding damages.

The '353 patent relates to a device used to protect against unauthorized access to computer software. The device includes a pseudorandom number ("PRN") generator that, when sent a first number, returns a second number. The second number is determined by an algorithm contained within the PRN generator; however, it appears random. The computer software to be protected is associated with two authorization codes stored on a memory device. One of the codes is sent to the PRN generator. The resulting number returned from the PRN generator is then compared with the second code. The number must match the second authorization code in order for access to the protected software to be allowed.

Rainbow sells several products for protecting access to computer software. Some of the products are only software based, meaning no additional hardware is required. Other products include a hardware key known as a "dongle" that plugs into one of the computer's external ports. Mr. Pickholtz alleges that these dongles contain a PRN generator and operate as claimed in the '353 patent.

Previously, Rainbow moved for summary judgment of non-infringement and Mr. Pickholtz cross-moved for summary judgment of infringement. This Court granted Rainbow's motion and denied Mr.

Pickholtz's motion. *Pickholtz v. Rainbow Techs, Inc.*, 125 F.Supp.2d 1156 (N.D.Cal. 2000). Mr. Pickholtz appealed. The Federal Circuit reversed the grant of Rainbow's motion on the grounds that the term "computer" had been misconstrued. *Pickholtz v. Rainbow Techs, Inc.*, 284 F.3d 1365 (Fed.Cir.2002). This Court had held that the term "computer" did not include peripherals. The Federal Circuit held that peripherals directly connected to the CPU circuit board within a reasonable proximity to the CPU and main memory were included in the meaning of "computer." They specifically held that Rainbow's dongles satisfy this requirement. Rainbow now brings a second motion for summary judgment of non-infringement.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the case. *See id.* at 248, 106 S.Ct. 2505. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *See id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995), and noting that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

### II. Direct Infringement

■ Mr. Pickholtz alleges that Rainbow directly and indirectly infringes the '353 patent. In order for Rainbow to be liable for indirect infringement, third party users, such as Rainbow's customers, must directly infringe the patent. *See Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (*Aro I*). Rainbow argues that its accused devices do not directly infringe the '353 patent, either when in the possession of Rainbow or its customers. Therefore, a threshold question is whether

the '353 patent is infringed by any of Rainbow's accused devices.

## A. "external memory device," "means for reading," and "processing means"

Claim 1 requires the combination of a PRN device with other elements of a computer, namely, an "external memory device," a "means for reading said external memory device," and a "processing means." Rainbow argues that its dongles and associated software do not read on Claim 1 because they do not include a computer. Rainbow does not manufacture computers or sell its devices with a computer. Furthermore, Rainbow argues that Mr. Pickholtz has not presented any evidence that third party users of Rainbow's products use them with computers.

 With respect to third party users, Rainbow's argument is disingenuous. Rainbow's description of its own products indicate that their dongles have no use unless they are attached to a computer. Rainbow's marketing literature indicates that its devices connect to computer ports and lists minimum computer requirements. Pickholtz Decl. Ex. 7 and 8. The Federal Circuit stated that Rainbow's dongles "externally connect to a computer port" and that "the accused device in this case ... indisputedly connects substantially directly to the CPU circuit board." *Pickholtz,* 284 F.3d at 1370–1371, 1374. Infringement may be established by circumstantial evidence. In *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1272 (Fed.Cir.1986), the court held that circumstantial evidence of product sales and instructions indicating how to use the product was sufficient to prove third party direct infringement in

an inducement-to-infringe claim. The court stated that "[i]f [defendant] is arguing that proof of inducing infringement or direct infringement requires direct, as opposed to circumstantial evidence, we must disagree. It is hornbook law that direct evidence of a fact is not necessary." *Id.* The circumstantial evidence presented by Mr. Pickholtz supports a reasonable inference that third party users of Rainbow's products use them in combination with a computer having the claimed hardware elements. *See Freeman,* 125 F.3d at 735. Therefore, a genuine issue of material fact exists.

With respect to direct infringement by Rainbow, Mr. Pickholtz must demonstrate that there is a genuine issue as to whether Rainbow made, used, offered to sell, or sold the combination in Claim 1. 35 U.S.C. § 271(a). There is no evidence, and Mr. Pickholtz has not argued, that Rainbow sells computers with their products. Therefore, Rainbow has not sold or offered to sell the combination in Claim 1. Instead, Mr. Pickholtz argues that Rainbow has *used* the combination in Claim 1. To support this assertion he points to a declaration submitted by Rainbow that describes how Rainbow's dongle products connect to a computer. Pickholtz Decl. Ex. 6. Included in that declaration are photographs depicting some of Rainbow's products connected to a laptop computer. Rainbow counters that this evidence does not demonstrate that Rainbow actually used the depicted combination of computer and dongle. Rainbow is technically correct. For example, the photographs could have been taken with the computer turned off. However, the pictures do demonstrate that Rainbow at least made the combination of computer and dongle.[1]

---

1. Rainbow also argues that there is no evidence that the depicted computer belongs to Rainbow. However, the photographs in question were submitted by Rainbow. A reasonable inference is that the combination was made and photographed by Rainbow. It is Rainbow's burden to prove otherwise. *See Freeman v. Arpaio,* 125 F.3d at 735.

Mr. Pickholtz also submitted a declaration of his expert, who opines that Rainbow's products typically would require the use of a computer for research, development, or testing. Pickholtz Decl. Ex. 5 at 2. As Rainbow points out, Mr. Pickholtz's expert's statement is not evidence of what Rainbow actually does. Mr. Pickholtz's expert only states what is "typically" done. However, it is difficult to imagine that Rainbow would develop its products without ever testing one in actual use or market them without ever providing a demonstration. The circumstantial evidence that Rainbow's products were designed to work with a computer and indeed, can only work when combined with a computer, is sufficient to create a genuine issue as to whether Rainbow ever made and used its accused products with a computer.

### B. "pseudorandom number generator device"

■ This Court previously construed "pseudorandom number generator device" to mean "hardware that generates, in a deterministic fashion, a sequence of numbers that appear to be random." *Pickholtz v. Rainbow Techs., Inc.*, 2000 U.S. Dist. LEXIS 21945 at *29 (2000). Rainbow argues that none of its accused products contain this device. They indicate that they have four categories of accused products: 1) "constant response" devices, 2) "software only" devices, 3) "ASIC cipher" devices, and 4) "microprocessor cipher" devices.

### 1. "constant response" devices

Rainbow alleges that its "constant response" devices have no number generator. Mr. Pickholtz disputes this assertion. To support his argument, Mr. Pickholtz points to the declaration of his expert, which states that these devices have microprocessors and/or other electronic logic. Pickholtz Decl. Ex. 5 at 2. The expert argues that if no number generation oc-

curred, this hardware would not be needed. *Id.* This argument does not follow. It is certainly possible that the "constant response" devices utilize hardware for purposes other than number generation. The expert further states that these devices generate a sequence of numbers in response to a query from a CPU and that the sequence appears to be random. *Id.* Rainbow objects to conclusory statements such as this because they are speculative and not supported by facts as required by Fed.R.Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The expert's declaration relied on by Mr. Pickholtz does not indicate how the expert came to his conclusions. There is no indication of any tests performed by the expert and the expert does not point to any specific documents that support his contention. For the purposes of raising a genuine issue of material fact, the declaration of an expert

> must set forth the factual foundation for his opinion—such as a statement regarding the structure found in the accused product—in sufficient detail for the court to determine whether that factual foundation would support a finding of infringement under the claim construction adopted by the court, with all reasonable inferences drawn in favor of the nonmovant.

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.,* 216 F.3d 1042, 1047–1048 (Fed. Cir.2000) (affirming the grant of summary judgment of non-infringement). The declaration of Mr. Pickholtz's expert has not met this standard with respect to the "constant response" devices. Therefore, the expert's conclusions are insufficient to raise a genuine issue as to whether the "constant response" devices contain a PRN generator.

Despite Mr. Pickholtz's failure with respect to the "constant response" devices,

Rainbow admitted that the firmware for the Unikey/S (one of the "constant response" devices) refers to a "pseudorandom number generator." Rainbow Motion, Ex. 5 at 1. This admission is sufficient to raise a genuine issue as to whether that device contains a PRN generator as construed by the Court.[2] Rainbow argues that the Unikey/S PRN generator mode cannot be accessed by customers. This assertion only relates to indirect infringement. Mr. Pickholtz has failed to contest the allegation of inaccessibility. Therefore, summary judgment is appropriate with respect to the Unikey/S device on the allegations of indirect infringement. However, as noted above, there is circumstantial evidence that raises a genuine issue as to whether Rainbow has made and used the Unikey/S device with a computer and a genuine issue as to whether the Unikey/S, in the hands of Rainbow, utilizes the PRN generator claimed in the '353 patent.

## 2. "software only" devices

■ Rainbow argues that its "software only" products have no *hardware* number generator, as required by the Court's construction. Mr. Pickholtz and his expert argue that there is a configuration of the Sentinel LM product (one of the "software only" products) that utilize the Sentinel SuperPro dongle (one of the hardware "ASIC cipher" products). Once again, Mr. Pickhotz and his expert fail to point to any specific facts that support this contention. Nor do they provide any details of how the combination of the Sentinel LM and Sentinel SuperPro dongle operate. Therefore, Mr. Pickholtz has failed to raise a genuine issue regarding the existence of a hardware PRN generator device in the Sentinel LM. Mr. Pickholtz has not made any arguments regarding the presence of a hardware PRN generator in the other "software only" products and thus, has also failed to raise a genuine issue as to them.

## 3. "ASIC cipher" and "microprocessor cipher" devices

With respect to the "ASIC cipher" and "microprocessor cipher" products, Rainbow asserts that these devices utilize a "streaming cipher generator" and that this generator is not a PRN generator. Rainbow's assertion lacks conviction. First, Rainbow notes at one point in its papers that the assertion is "not germane to the issues presented by this Motion." Rainbow Motion at 7–8. Second, Rainbow presents a chart showing the claim elements that they believe are lacking in their products. *Id.* at 8. Rather than indicating the lack of a PRN generator in the "ASIC cipher" and "microprocessor cipher" products by marking an "X" in the chart as they did for other claim elements, Rainbow lists the "Streaming Cipher" for the PRN generator. Furthermore, deposition testimony of James Khalaf supports the assertion that the Sentinel SuperPro dongle contains a PRN generator. Pickholtz Decl. Ex. 13 at 179. Mr. Khalaf indicated that when a number is sent to the Sentinel SuperPro dongle, it responds with a code that looks random to someone not familiar with it. *Id.* This code is based on a value stored in the Sentinel SuperPro dongle. *Id.* Thus, there is evidence that the Sentinel SuperPro generates a number in a deterministic fashion that appears to be random and therefore contains a PRN generator. Because the Sentinel Super-Pro, as one of the "ASIC cipher" products, generates numbers using a "streaming cipher generator," it can be inferred that the "streaming cipher generator" constitutes a

---

**2.** Rainbow appears to concede this point in its reply brief by excluding the Unikey/S from the list of "constant response" devices for with it alleges summary judgment of noninfringement is appropriate.

PRN generator. This inference implies that all of the "streaming cipher generators" in the other "ASIC cipher" and "microprocessor cipher" products are also PRN generators. These inferences support the otherwise insufficient bald assertion of Mr. Pickholtz's expert that a "streaming cipher generator" is a PRN generator. Pickholtz Decl. Ex. 5 at 2; *see Collins*, 216 F.3d at 1046 (expert's statement that "the so-called JNet is a TST switch" was insufficient to survive summary judgment). Therefore, there is a genuine issue as to whether the "ASIC cipher" and "microprocessor cipher" products contain a PRN generator.

### C. "first authorization code being read prior to execution of said computer software"

█ Rainbow argues that its "ASIC cipher" and "microprocessor cipher" products do not read on Claim 1 because they execute the computer software before reading the first authorization code. This argument is premised on the fact that the security routines that operate with the products are imbedded in the protected software program. In essence, Rainbow argues that because the protected software program incorporates the security routines, it is necessary for the program to execute so that the security routines can perform their functions, such as reading the first authorization code. However, Rainbow's argument fails to recognize that while the security routines and the protected software routines may exist in the same computer *program,* Claim 1 only requires reading of the first authorization code prior to execution of the protected "computer *software.*" This Court previously construed "computer software" to mean "a set of instructions for execution on a computer, and may include associated data." *Pickholtz,* 2000 U.S. Dist. LEXIS 21945 at *29. It is therefore possible for the protected "computer software" of

Claim 1 to exist as a subset of a larger computer program or other file structure that contains additional instructions and/or data.

The important question for determining whether this claim element is present in an accused device is whether or not the first authorization code is read from the external memory device before the execution of the first instruction in the set of instructions to be protected. Since Rainbow failed to distinguish between a computer program that includes both security and protected software routines and the protected "computer software" itself, it is unclear whether or not they allege that protected "computer software" instructions are executed prior to the reading of the first authorization code. Mr. Pickholtz's expert states that Rainbow's software, when combined with the software application that a software developer wishes to protect, performs a legitimacy check that includes reading a first authorization code before any instructions of the software application are executed. As such, there is a genuine issue as to existence of this claim element in Rainbow's products.

### D. infringement under the doctrine of equivalents

█ Rainbow's argument that their products do not directly infringe the '353 patent, either in their own or third party hands, is based on their assertion that their products lack some or all of the required claim elements. Thus, they argue that the familiar "all elements rule" has not been satisfied. *See Johnston v. IVAC Corp.,* 885 F.2d 1574, 1577 (Fed.Cir. 1989) ("To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent."). Mr. Pickholtz argues that since Rainbow has failed to address whether or

not alleged missing elements may be represented by equivalents, its motion should be denied. However, it is Mr. Pickholtz's burden to show that there are genuine issues of material fact as to whether alleged missing elements are present in the accused device, either literally or by equivalents. *Id.* at 1578 ("In light of [defendant's] evidence that limitations of the claims could not be found in its devices at all, [plaintiff] had the burden of coming forward with sufficient countering evidence. Mere assertion of similarity in the accused and patented devices is insufficient to create a genuine factual issue."). Mr. Pickholtz has not pointed to any evidence that Rainbow's products contain equivalents of the elements for which no genuine issue as to literal existence was found. Therefore, Mr. Pickholtz has also not raised a genuine issue as to their existence under the doctrine of equivalents.

### F. direct infringement summary

Summary judgment of non-infringement is appropriate for all of the "constant response" devices except the Unikey/S. Mr. Pickholtz has failed to offer evidence that these devices contain a PRN generator and thus, has failed to raise a genuine issue as to their direct infringement by either Rainbow or Rainbow's customers. However, there is a genuine issue as to direct infringement of the Unikey/S by Rainbow. Summary judgment of non-infringement is also appropriate for all of the "software only" devices. There is no genuine issue as to the existence of a hardware PRN generator in these devices. There is, however, a genuine issue as to whether the "ASIC cipher" and "microprocessor cipher" devices contain all of the claim elements and thus, are directly infringed by Rainbow and/or Rainbow's customers.

### III. Inducement to Infringe

■ Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Rainbow argues that to be liable for inducement to infringe, Mr. Pickholtz must show that it had the specific intent to cause its customers to infringe. In other words, Rainbow argues that it must have believed that its products would infringe the patent when used by its customers. Rainbow then asserts that since it had counsel's opinion that its products did not infringe, it cannot be liable for inducing infringement. Mr. Pickholtz contends that the required intent is that Rainbow intended to cause the acts that the court determines are infringing.

In *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed.Cir. 1990), the Federal Circuit stated that to prove inducement to infringe,

[i]t must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements.

Based on *Manville*, this Court held in *Amersham Pharmacia Biotech, Inc. v. Perkin–Elmer Corp.*, 2000 WL 1897300 (N.D.Cal.2000), that a plaintiff must show more than that it intended its customers to use their products in a way that infringes the patent at issue; plaintiffs must show that the defendant "possessed specific intent to encourage another's *infringement*." *Id.* at * 5. Like the defendant in *Amersham*, Rainbow has attempted to demonstrate that "it has been operating under a good faith belief, based on an opinion of counsel, that its products do not induce

infringement." *Id.* at *6. After learning of the '353 patent, Rainbow obtained an opinion from an attorney stating that their products did not infringe the patent.

Rainbow cites no case to support its assertion that it is entitled to judgment as a matter of law based on its receipt of an opinion letter. In *Amersham*, this Court merely held that the fact that the defendant had obtained an opinion letter precluded granting the *plaintiff's* motion for summary judgment; it did not hold that the defendant was entitled to summary judgment on the inducement claim. For example, in *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1379 (Fed.Cir.2001), the Federal Circuit reversed the trial court's judgment as a matter of law of no inducing infringement on the grounds that, although the defendant presented a non-infringement opinion letter, the jury nonetheless found willful infringement. The court concluded that the jury "apparently discredit[ed defendant's] assertion that it relied in good faith on an opinion of counsel." *Id.* Accordingly, Rainbow's motion for summary judgment of no inducement must be denied.

## IV. Contributory Infringement

■ 35 U.S.C. § 271(c) provides that

Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

Similar to its contention for the inducement to infringe claim, Rainbow argues that contributory infringement requires that a defendant have specific knowledge that its products infringe the patent at issue. It thus contends that the non-infringement opinion that it obtained from counsel precludes it from liability for contributory infringement. Mr. Pickholtz counters that the knowledge requirement is only knowledge that the customers use the products in a way that the court determines constitutes infringement.

The Supreme Court has held that contributory infringement under 35 U.S.C. § 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964) (*Aro II*). "All that is required for a finding of contributory infringement is (1) knowledge of the activity that is alleged to be infringing ... and (2) knowledge of the patent." *Sandisk Corp. v. Lexar Media, Inc.*, 91 F.Supp.2d 1327, 1335 (N.D.Cal. 2000). Rainbow has admitted that it was aware of the '353 patent once it received a demand letter from Mr. Pickholtz. The circumstantial evidence of how Rainbow's devices operate with a computer and that those devices are sold to customers imply that Rainbow had knowledge of how its devices were being used. Therefore, summary judgment of no contributory infringement based on Rainbow's knowledge is not appropriate.

Rainbow also argues that its products are "a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). They indicate that the "ASIC cipher" and "microprocessor cipher" products are capable of operating in a constant response mode in which no number generation occurs. Mr. Pickholtz argues that it is irrelevant

if an accused product can perform additional functions beyond an infringing one.

Even if the constant response mode of the "ASIC cipher" and "microprocessor cipher" products constitute non-infringing use, such use must be "substantial" to avoid contributory infringement liability. Case law indicates that the inquiry into what constitutes "substantial" use is essentially a quantitative one. In analyzing contributory infringement in a copyright infringement case, the Supreme Court noted the similarity between the substantial non-infringing use exemptions in copyright law and patent law. *Sony Corp. of Am. v. Universal Studios*, 464 U.S. 417, 442–443, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). The Court went on to note that substantial non-infringing use can be shown when "a significant number of [uses] would be non-infringing." *Id.* at 443, 104 S.Ct. 774. The Federal Circuit has also looked at quantitative factors, finding substantial non-infringing use when 40 to 60 percent of the uses may have been non-infringing. *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 674 (Fed. Cir.1990) (rejecting attorney argument that 98 percent of use was infringing). This district addressed the "substantial" requirement in *Hoffmann–La Roche, Inc. v. Promega Corp.*, 33 U.S.P.Q.2d 1641, 1648 (N.D.Cal.1994), stating

> The language of 35 U.S.C. Section 271(c) clearly requires a qualitatively significant noninfringing use to be "substantial" before a defendant can be fully absolved from contributory infringement liability. There must be a quantitative element to the staple/nonstaple analysis in order to determine whether a noninfringing use is "substantial." Whether a use is "substantial" or not depends on how likely and often the use will occur. Thus, occasional aberrant use of a product does not make that use "substantial." ... Similarly, inefficient and uneconomical uses are less likely to be deemed "substantial."

The *Hoffmann–La Roche* court went on to deny defendant's motion for summary judgment of non-infringement because there was evidence that the products in question were optimized for the infringing use and that the non-infringing uses were "not commercially viable, efficient, or recommended uses." *Id.* at 1648–1649; *see also Cordis Corp. v. Medtronic AVE, Inc.*, 194 F.Supp.2d 323, 350 (D.Del.2002) (despite evidence, including product instructions, that product was suitable for non-infringing use, such use was found to be not substantial); *Anton/Bauer, Inc. v. PAG, Ltd.*, 2002 WL 1359673 at *8 (D.Conn.2002) (holding that "limited non-infringing use ... [was] not substantial, and thus, [did] not confer ... the status of a staple article of commerce").

Mr. Pickholtz presented evidence that Rainbow considers competitors' products that generate a fixed response as inferior. Pickholtz Decl. Ex. 10. Rainbow stated that the security of such products is easy to compromise. *Id.* In contrast, Rainbow's promotional materials advertise the "bulletproof security" of their products. Pickholtz Decl. Ex. 7. The implication is that any use of Rainbow's products in a fixed response mode, if any, would be small. Therefore, there is a genuine issue of material fact as to whether any non-infringing use of Rainbow's products is substantial and a genuine issue as to the existence of contributory infringement.

## V. Simultaneous Claims of Direct and Indirect Infringement

█ Rainbow argues that if a plaintiff alleges direct infringement, they cannot also assert inducing or contributory infringement. A line of cases holds that direct infringement and indirect infringement "are mutually exclusive when the actions are based on the same act." *John-*

*son Products Co. v. Pro–Line Corp.*, 1998 WL 699024 at *15 (N.D.Ill.1998); *see also Picker Int'l, Inc. v. Varian Assocs., Inc.*, 661 F.Supp. 347, 350 (N.D.Ohio 1987) ("It is well settled that the doctrine of 'actively inducing infringement' . . . is not available as a separate source of liability against one who is also alleged to be a direct infringer."); *SureSafe Industries., Inc. v. C&R Pier Mfg.*, 850 F.Supp. 869, 873 (S.D.Cal. 1993) ("Since plaintiffs have alleged direct infringement, they have no standing to assert inducing or contributory infringement."). However, as indicated earlier, Rainbow is not liable for direct infringement based on the sales of its products. If it is liable for direct infringement, it is based on the making and using of its products in product development and testing. The indirect infringement claims are based on Rainbow's sales of its products to customers. Thus, the claims for direct and indirect infringement are based on separate acts and are not mutually exclusive.

## VI. Rainbow's Motion for Partial Summary Judgment Regarding Damages

Rainbow moves for summary judgment that Mr. Pickholtz's damages should be limited to a reasonable royalty. The parties agree that because Mr. Pickholtz has never sold products under his patent, his damages should be calculated using a reasonable royalty. To the extent that there is any disagreement, it is over the wording of the order. Mr. Pickholtz argues that Rainbow's proposed "Plaintiff is entitled to no damages except a reasonable royalty" implies that Mr. Pickholtz is not entitled to enhancements such as treble damages, attorney's fees, costs, and interest. Rainbow does not dispute that Mr. Pickholtz may still seek those enhancements. Therefore, Rainbow's motion is granted with the understanding that Mr. Pickholtz is entitled to pursue the usual available damages enhancements.

## CONCLUSION

For the reasons stated above, Rainbow's motion for summary judgment of non-infringement is GRANTED with respect to direct, inducing, and contributory infringement of the following products: Sentinel C, Sentinel Scout, Sentinel Scribe, Net Sentinel C, Sentinel Eve, Block, Unikey/ST, Unikey NET, N'Abel, Sentinel LM, Sentinel Express, and UniGuard. Rainbow's motion is also GRANTED with respect to inducing and contributory infringement of the Unikey/S product. The motion is DENIED with respect to direct, inducing, and contributory infringement of the following products: Software Sentinel, Sentinel Pro, Net Sentinel Pro, Sentinel SuperPro, Sentinel 797, Activator, Activator/M, Activator/M Locked, UniKEY, Sentinel Eve3, Net Sentinel Eve, Sentinel Duo, and Micro Sentinel UX. The motion is also DENIED with respect to direct infringement of Unikey/S. Rainbow's motion for partial summary judgment regarding damages is GRANTED.

**IT IS SO ORDERED.**